ANTHONY et al. v. GENNERT.

(Circuit Court, D. New Jersey. January 2, 1900.)

1. PATENTS—INFRINGEMENT—PHOTOGRAPHIC SHUTTERS.

The Green patent, No. 362,211, for a photographic shutter, construed, and *held* valid, but limited by the stated purpose of the invention, which was to adapt the shutters previously in use to cameras having small-sized front boards, by constructing them in two pairs, each pair of which, when opened, should fold back into the case side by side, and thus lessen the space required for their operation, and, as so limited, not infringed by shutters which, while arranged in two pairs, do not fold side by side.

2. SAME.

The Perry patent, No. 287,858, for a photographic shutter, *held* to be limited by the amendments made in its claims to meet objections of the patent office to the specific combination therein described, and, as so limited, not infringed.

This was a suit in equity for the infringement of certain patents for photographic shutters. On final hearing.

Edmund Wetmore, for complainants.

Louis C. Raegener and S. Lewis Moody, for defendant.

GRAY, Circuit Judge. This action is brought for infringement by the defendant of two patents for photographic shutters, owned by complainant, viz. No. 362,211, of May 3, 1887, to George F. Green, and No. 287,858, of November 6, 1883, to Henry B. Perry. The bill alleges conjoint infringement of these patents, together with another patent, afterwards withdrawn from consideration in this suit.

"Photographic shutters are designed to be combined with either one end or the other of the lens tube of the photographic camera, so as to close such tube against the entrance of light to the interior of the camera containing the sensitized plate, until such time as it is desired that light should be admitted thereto, when the shutter opens for this purpose, then closes accordingly, as the mechanism is manip-

ulated by the operator." The specifications state that the invention relates to that class of shutters which are operated by a pneumatic engine, and particularly to the shutter for which letters patent No. 342,693 were granted to the same inventor, on the 25th of May, 1886. The previous patent here referred to was one which provided for a two-winged shutter to close the orifice containing the lens of a photographic apparatus. Two wings were pivoted on the lower edge of the circular orifice, and were operated by the stroke of a piston communicated to a projection from each wing, constituting the short ends of levers of the first order; thus giving to the wings a rapid and almost instantaneous closing motion from the sides towards the center, where they slightly overlapped, to exclude all possibility of the entrance of light. These wings necessarily operated in parallel, but different, planes, in order that one might close over the other, and were made of light and thin material, like Taggers' iron. When the lens was opened, these wings, of course, were moved back inside the frame, and occupied, each of them, a space something wider than one-half the orifice. They accomplished the purpose of rapid and almost instantaneous opening and closing of the photographic lens, which had become so desirable in modern photography, in which such highly sensitized plates are used. But the space occupied by the wings in the frame, on each side of the orifice, made necessary a broader "front board," as it was called, than was convenient in cameras that were intended to be packed and carried about. The patentee, Green, devised a way in which to overcome this inconvenience, by dividing the two wings of his shutter, so as to make a pair of wings, instead of one wing, on each side, that should be actuated from pivots on one side by an air engine, as in the case of the two-winged shutters, each wing of the pair having a different range of motion, and moving in parallel, but different, planes, so that they could overlap each other when stowed away in the sides of the frame, and also when moving beside each other when closing or opening the lens. The wing of each pair which served to close the center of the orifice must, of course, move with a quicker motion from its place of rest than the other wings whose office it was to close the sides of the orifice. This was arranged by the different position of the pivots and slots in the lower side of the orifice, and was a matter of not difficult mechanical arrangement. The end had in view by the patentee, as set forth in his specification, was thus achieved. It is thus stated: "The object of this improvement is to adapt my shutter to cameras which have small-sized front boards, and which therefore cannot apply a shutter which requires so much lateral space as those heretofore in use. It is also adapted for use in the front of the tube, and will not then be so large as to be objectionable." Though the principle upon which this was done was simple, and only involved the cutting in two, so to speak, of each wing of the two-winged shutter, so that the two narrower wings thus formed should fold against each other side by side, like the sticks of a lady's fan, yet it will not do on this account to say that it did not involve invention. It is characteristic of the well-developed inventive faculty to receive suggestions from what are oftentimes the most ordinary and familiar objects in nature or in art. The folding

device, by which the double pair of shutters could be packed away more closely, is certainly similar to the contrivance by which the sticks of a lady's fan or the pinions in the wing of a bird are folded away when closed. The suggestion thus made, if suggestion it was, was new and useful in its application to the subject of the patent in suit, and was a real and valuable exercise of the inventive faculty. The question here raised, then, must be as to the scope of the invention described in the specifications and stated in the first claim, and whether, properly interpreted, that scope covers the contrivance of the defendant in this suit.

As we have seen, the object had in view by the patentee of the Green patent was a shutter, so divided into four wings, instead of two, that each pair of wings would stow or pack away in the opposite sides of the lens opening, and take up nearly one-half less room laterally in the frame of the front board than was occupied by the two-winged shutters. The diminution of lateral space required for the stowing of the shutters when the lens was open seems to have been the primary object of the invention. How the patentee sought to accomplish this is set forth in claim 1, which is as follows: "(1) A photographic shutter provided with four wings, AA, BB, overlapping each other, and having different ranges of movement, whereby they are enabled to fold back into the case side by side, substantially as set forth." As the other claims have only to do with the specific mechanism, the first is the only claim with which we are concerned in the question of infringement. This claim, then, is the measure of the monopoly granted to the patentee, and this monopoly cannot be extended beyond what is demanded in the claim, although it may be limited by the state of the art. The claim is not for four wings having different ranges of motion, but for a combination of these, when so constructed and arranged, as to enable the wings to fold back into the case side by side. The claim is not broadly for a four-winged shutter, but is limited by the designation of these wings by letters, and by reference to the drawings and words, "substantially as set forth." The words, "fold back into the case side by side," must be given what would seem to be their ordinary and first-blush meaning. That meaning, plainly, is not only, or chiefly, that the two pairs of wings should, on opening the lens, move back side by side, but that, when in the state of rest, they should lie side by side in the space on each side of the lens opening. To accomplish the object of diminishing the lateral space necessary to hold the shutter wings, which we have seen was the object of the invention, it was essential that the wings should lie superimposed, the one upon the other, or side by side. It was not essential that, in the act of moving back to the place of rest, they should move side by side. The words, "to fold back into the case side by side," refer, it is true, to the act of folding, but contemplate the completion of that act when the wings are folded back into the case side by side. The folding back, then, of the four wings, AA, BB, with different ranges of movement, so that they should lie side by side, seems the essential feature of the invention. Not only does the claim thus interpreted not permit of a broader

scope, but the state of the art would forbid a claim resting on the mere division of the two single shutters into four.

Comparing the claim thus interpreted with defendant's four-winged shutter, we find that the latter is a photographic shutter provided with four wings, one pair of which are on one side of the lens opening, and the other pair on the opposite side. As arranged in practice, one pair is on the upper side, and the other pair on the lower. The upper pair are narrower than the lower pair, and they have different ranges of movement. The four wings also overlap each other somewhat, when the lens is closed, with the obvious purpose of insuring the exclusion of light. This feature is given to other forms of shutters, and notably so in the case of the two-winged shutter of the first Green patent; but, when the lens is open, the shutters do not fold back into the case side by side, as do the shutters of the Green patent. The shutters of the Green patent are pivoted on one side of the lens, and fold back alongside of each other, until they close, like the sticks of a fan, on each side of the lens opening. In the defendant's shutter, the wings above and below, while overlapping when closed, retreat from each other to opposite sides of the lens, and do not, in any sense, fold back side by side, or lie side by side when they are folded back. It is true that, when the lens is open, the tips of the lower wings slightly overlap the tips of the upper wings, or vice versa; and on this account, as well as on account of the overlapping when the lens is closed, they move in different, though parallel, planes, so that they should not meet edge to edge in the center or when folded back. But the overlapping of the points of the wings, when folded back, does not constitute a "folding back into the case side by side," as set forth in the claim, nor do the "wings, BB, close back in the same space occupied by the wings, AA." In the act of unclosing the wings of defendant's shutter, instead of folding back side by side, they retreat from each other. They are closer together when the lens is closed than when it is open. It would be quite possible to cut off the points that overlap when the shutter is open, so that the wings should not touch at all, without destroying the essential features of the defendant's device.

The defendant's shutter, therefore, seems to lack the essential feature of the Green patent, viz. the folding back of the two pairs of wings, side by side, when the lens is open. It is not clear what the object of the defendant's four-winged shutter was. The evidence does not disclose it, and the counsel for defendant says that it can only be conjectured. But, whatever it was, the means employed in defendant's shutter are two sets of wings, having different ranges of movement, it is true, but they are not the combination of two sets of wings, AA, BB, adapted to fold back into the case side by side. As has just been said, the object of defendant's form of shutter is not apparent, but it could hardly have been to diminish the space occupied by the shutters when the lens was open; for, whatever economy may have been gained as to the lateral space, it was more than lost in the increase of vertical space required for the stowing of the upper and lower pairs of shutters. The contention of defendant

seems correct, that the object of the Green patent, as gathered from the specifications and claim, was not an economy of space laterally at the expense of an increase of space vertically. As is well said by defendant, if this had been so, it could have been accomplished by pivoting the two-winged shutters at one side, so that they would be stowed above and below when the lens was open. And this contention as to the object of the invention is strongly supported by the language from the specifications already quoted, and which may be here repeated: "The object of this improvement is to adapt my shutters to cameras which have small-sized front boards, and which therefore cannot apply a shutter which requires so much lateral space as those heretofore in use. It is also adapted for use on the front of the tube, and will not then be so large as to be objectionable." It is plain that a construction which narrowed the width, but increased the length, of the front board, would not accomplish the object as thus stated. As, therefore, there is not found in defendant's structure a combination consisting of substantially the same means, having substantially the same functions, and adapted to attain substantially the object, proposed by the complainant's patent, there is no infringement.

The other patent, of which a conjoint infringement with the Green patent, just discussed, is alleged in the bill, is that granted to Henry B. Perry, hereinafter called the "Perry Patent," being 287,858, of May 3, 1887. The claim of this patent reads as follows: "The combination of the frame, A, slides, BB, having stud, b', links, B', and lever, C, with the cylinder, D, having piston, d, connected to the lever, and the air bulb, E, and its tube, e, all constructed and arranged to operate substantially as and for the purpose set forth." The patent shows and describes a shutter comprising two slides, lettered, BB, provided with openings which, in one position of the slides, may coincide with and uncover the lens opening of the camera, but which, in a different position of the slides, are moved out of coincidence, so as to close the lens opening. These slides are separately shown in Figs. 3 and 4 of the patent drawing. The original purpose of the inventor is shown by the file wrapper and contents, and it was, in the language of the specifications, to "expose the lens to the light at the center first, and close it at this point last." The original application contained three claims, the first of which was as follows: "(1) In a shutter for cameras, the combination of two perforated slides, moving in opposite directions, whereby the exposure is from the center towards the edges, substantially as and for the purpose set forth." The first claim was objected to upon reference to the British Journal of Photography Almanac for 1880 (page 123), and was erased by the applicant. The original second claim read as follows: "In a photographic shutter worker, a frame containing two oppositely moving perforated slides, connected together and operating simultaneously, in combination with an air cylinder, provided with a piston and an air bulb and conductive tube, substantially as described and shown." This claim was rejected upon reference to the Spurge and Whitcher patent, and was then amended to read as follows: "In a photographic shutter, a perforated frame containing two oppositely moving

perforated slides, connected together and operating simultaneously, the perforations of the frame and slides registering with each other, in combination with an ·air cylinder, provided with a piston and an air bulb and conductive tube, substantially as shown and described." This amended claim was rejected upon reference to the state of the art, and upon further reference to volumes 26 and 28 of the British Journal of Photography (pages 555, 126). The applicant, without further contention, erased this original second claim, and the patent was then allowed upon the original third claim, which is now the only claim of the patent, and has been recited above.

It is thus apparent that the patentee supposed, when he made his application, that he had invented a photographic shutter which would "expose the lens to the light at the center first, and close it at this point last," and particularly the means for constructing and operating such a shutter. It is a matter of record that the rejection of these claims was acquiesced in by the applicant, and that he consented finally to confine his monopoly to the narrow limits set forth in the single claim contained in the patent as issued. It seems to the court, then, that his monopoly must be measured by the particular mechanism and combination described in the claim. And this conclusion seems all the more necessary, by reason of the fact that in the claim the separate parts of the combination are designated by the specific letters of reference used in the drawings. "When a patentee, on the rejection of his application, inserts in his specification, in consequence, limitations and restrictions, for the purpose of obtaining his patent, he cannot, after he has obtained it, claim that it shall be construed as it would have been construed if such limitations and restrictions were not contained in it." Roemer v. Peddie, 132 U. S. 317, 10 Sup. Ct. 99, 33 L. Ed. 383. In this patent, therefore, we have a combination of three things: First, two oppositely moving perforated slides; second, a mechanism for moving them in opposite directions at the same time, which consists simply of a lever of the first order, pivoted or fulcrumed in the middle, each arm of which is connected with one of the slides by means of a connecting link and stud, so that when power is applied to move one end of the lever in one direction, and moving the slide with it, the other end moves in the opposite direction, and communicates that motion to the other slide; third, a pneumatic engine, which actuates the mechanism by moving a piston attached to one end of the lever.

A careful examination of the testimony of the experts in that regard clearly demonstrates that there was nothing new in the device of the two perforated slides moving in opposite directions; nor is there anything new, or that required invention, in the use of a lever for transmitting the motion given by the piston of the pneumatic engine in one direction to the other end of the lever in an opposite direction, nor was the pneumatic engine new in the art. Without stopping to inquire whether these old devices so co-operated in combination as to produce a new result in a new way, and whether the combination involved patentable invention, it will be sufficient, for the purposes of this case, to inquire whether this particular combina-

tion is found in the alleged infringing structure of the defendant. The defendant's structure is a two-winged shutter, pivoted on one side of the lens opening, with short ends or ears below the pivot or fulcrum, to which the power is applied, to give motion in opposite directions by means of a lever connected with a piston of a pneumatic engine. It is true that these wings thus pivoted constitute levers of the first order, to the short ends of which the power is applied, and they move slowly through a small arc of a circle, in opposite directions, by means of another lever, to which the power is directly applied. The shutter wings thus constituting the long ends of the lever move consequently, also, in opposite directions, and over longer arcs, and towards their ends, with a much swifter motion. This seems an obvious utilization of the principle of the lever. The power is applied at the ends where the distance to be traveled is small, and the motion comparatively slow; while the other ends, constituting the wings of a shutter, have no force to exert, but attain the swift movement necessary for the opening and closing of the lens. This is an ingenious and useful application of the principle of the lever, but different in its operation from that of the Perry patent. In the latter, we have shutters or slides moving in straight or right lines, on supporting ways or bearings; while in the former we have the wings of the shutter moving in curved lines, upon pivots or pivotal supports. In the opinion of the court, these two methods of opening and closing the lens are not sufficiently identical in principle and operation to support the allegation of infringement. In view of the fact that the single claim of the Perry patent was so narrowed as to be confined to the specific structure described, it is not difficult to come to this conclusion. The combination there claimed was of two perforated slides, moving in opposite directions, across the lens opening; the movement in opposite directions being effected by means of a lever of the first order, actuated at one end by a pneumatic engine. These slides, pushed in straight lines along supporting grooves, are, in the opinion of the court, a different mechanism from the fan-like shutters of the defendant's device; so that, even if the claim of the patent had not been so narrowed, it would still be true that the one device was not the mechanical equivalent of the other. The mechanism of the lever, as one of the primary mechanical powers, cannot, of course, be appropriated in the monopoly of a patent, although it may, like the principle of the screw or the wedge, be so used or applied in combination as to achieve useful, novel, and patentable results. The absence, then, of the slides described in the Perry patent, is sufficient to destroy the identity of the combination in the defendant's structure with that of the Perry patent. The bill, therefore, must be dismissed, with costs.